1 | **Mark J. Werksman, Esq. (State Bar No. 120767)**
**Karen M. Sosa, Esq. (State Bar No. 269429)**
2 | **WERKSMAN JACKSON & QUINN LLP**
**888 West Sixth Street, Fourth Floor**
3 | **Los Angeles, California 90017**
**Telephone: (213) 688-0460**
4 | **Facsimile: (213) 624-1942**

5 | **Attorneys for Defendant**
**GARY DAVID GOULIN**

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | THE UNITED STATES OF AMERICA,          ) **No. 2:22-CR-476-MEMF**

12 |                                        ) **DEFENDANT GARY GOULIN'S**
   |              Plaintiff,                ) **SENTENCING MEMORANDUM**
13 |       vs.                             ) **AND EXHIBITS**

14 | GARY DAVID GOULIN,                     )

15 |              Defendant.               ) **Date:  October 13, 2023**
   |                                       ) **Time: 10:00 a.m.**

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ..............................................................................................3

II.    STATEMENT OF FACTS ...............................................................................4

       A.    MR. GOULIN'S BACKGROUND, EDUCATION AND
             EMPLOYMENT ...............................................................................4

       B.    MR. GOULIN'S PHYSICAL AND MENTAL HEALTH...................6

III.   MEMORANDUM OF POINTS AND AUTHORITIES................................7

       A.    SECTION 3553(a)(1): THE HISTORY AND
             CHARACTERISTICS OF THE DEFENDANT ...................................8

             1.    MR. GOULIN'S HISTORY AND CHARACTERISTICS
                   ARE MITIGATING..........................................................................8

             2.    MR. GOULIN'S ACTIONS SINCE ARREST
                   INDICATE THAT HE IS MAXIMALLY MOTIVATED
                   TO REFORM..................................................................................10

       B.    SECTION 3553(a)(2): THE NEED FOR THE
             SENTENCE IMPOSED .......................................................................11

             1.    THE SERIOUSNESS OF THE OFFENSE...............................12

             2.    THE NEED TO PROVIDE JUST PUNISHMENT AND
                   PROMOTE RESPECT FOR THE LAW.....................................13

             3.    THE NEED TO PROTECT THE PUBLIC.................................14

                   i.    THERE IS A LOW LIKELIHOOD
                         OF RECIDIVISM ............................................................14

             4.    THE NEED TO PROVIDE THE DEFENDANT WITH
                   CORRECTIONAL TREATMENT IN THE MOST
                   EFFICIENT MANNER ............................................................15

IV.    CONCLUSION................................................................................................17

i

1

## TABLE OF AUTHORITIES

**PAGE(S)**

2

3   **SUPREME COURT CASES**

4   *United States v. Booker*
        543 U.S. 220, 301 (2005) .............................................................................7

5   **FEDERAL CASES**

6   *United States v. Adelson*
        441 F. Supp. 2d 506 S.D.N.Y (2006) ........................................................8,11
7

8   *United States v. Carty*
        520 F.3d 984. 9th Cir. (2008) .....................................................................12
9
    *United States v. McBride*
10       434 F.3d 470. 6th Cir. (2006) .......................................................................7

11   *Simon v. United States*
        361 F. Supp. 2d 35. E.D.N.Y (2005) ........................................................13,14
12

13   *United States v. Spigner*
        416 F.3d 708 8th Cir. (2005) ......................................................................12

14   *United States v. Wilson*
        350 F. Supp. 2d 910 D. Utah (2005) ............................................................13
15

16   **FEDERAL STATUTES**

    18 U.S.C. § 2252A(a)(5)(B), (b)(2) ..................................................................3
17
    18 U.S.C. § 3553(a) ..............................................................................*passim*
18
19   18 U.S.C. § 3553(a)(2)....................................................................................12

20   18 U.S.C. § 3553(a)(2)(A) .............................................................................13

21   **FEDERAL GUIDELINES**

22   U.S.S.G. § 2G2.2(b)(2) ....................................................................................3

23   U.S.S.G. § 2G2.2(b)(4)(A)...............................................................................3

24   U.S.S.G. § 2G2.2(b)(6) ....................................................................................3

25   U.S.S.G. § 2G2.2(b)(7)(d) ...............................................................................3

26   U.S.S.G. § 3E1.1(a)..........................................................................................3

27

28

ii

**OTHER SOURCES**

S. Rep. No. 98-225, at 75-76 (1983)..........................................................................13

U.S.C.C.A.N. 3182, 3258–59, (1984)......................................................................13

U.S. Sentencing Commission, Recidivism of Federal Offenders Released
in 2010 30 (September 2021), available at
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
publications/2021/20210930_Recidivism.pdf ...................................................14,15

1  Mark J. Werksman, Esq. (State Bar No. 120767)
   Karen M. Sosa, Esq. (State Bar No. 269429)
2  WERKSMAN JACKSON & QUINN LLP
   888 West Sixth Street, Fourth Floor
3  Los Angeles, California 90017
   Telephone: (213) 688-0460
4  Facsimile: (213) 624-1942

5  Attorneys for Defendant
   GARY DAVID GOULIN
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  THE UNITED STATES OF AMERICA, | ) No. 2:22-CR-476-MEMF |
| 12              Plaintiff, | ) DEFENDANT GARY GOULIN'S ) SENTENCING MEMORANDUM |
| 13    vs. | ) AND EXHIBITS |
| 14  GARY DAVID GOULIN, | ) |
| 15              Defendant. | ) Date: October 13, 2023 ) Time: 10:00 a.m. |

16

17  **TO THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG, UNITED STATES DISTRICT JUDGE, AND ASSISTANT UNITED STATES**
18  **ATTORNEY SARAH LEE:**

19         Defendant, Gary David Goulin ("Mr. Goulin"), by and through his counsel

20  of record, Werksman Jackson & Quinn LLP, hereby files his Sentencing

21  Memorandum. Mr. Goulin's position is based upon the factual basis established

22  pursuant to his plea agreement, the PSR, the attached Memorandum of Points and

23  Authorities, all documents filed herewith, and any oral argument presented at the

24  sentencing hearing pursuant to Federal Rule of Criminal Procedure, Rule 32(c)(1).

25  //

26  //

27  //

28  //

1

Dated: September 29, 2023

Respectfully submitted,
WERKSMAN JACKSON & QUINN LLP

Mark J. Werksman
Karen M. Sosa
Attorneys for Defendant
Gary David Goulin

2

# I.

# INTRODUCTION

On April 26, 2023, Mr. Goulin pleaded guilty to one count of Possessing Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). (PSR ¶¶ 1-2.) Pursuant to the plea agreement, Mr. Goulin agreed to argue for no less than 48 months in prison. (ECF Doc. 27, Plea Agreement, p. 17.) Mr. Goulin also agreed to a fifteen-year period of post-release supervision and a base fine of $25,000. (Ibid.) In this sentencing memorandum, Mr. Goulin sets forth the justification for a custodial sentence of 48 months.

In the Pre-Sentence Report ("PSR") filed September 8, 2023, Probation identified a base offense level of 18 by applying United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(a)(1). (PSR ¶ 28.) Under Specific Offense Characteristics, Probation added two levels for material depicting a minor younger than 12 (U.S.S.G. § 2G2.2(b)(2)), four levels for material depicting sadism and/or masochism (U.S.S.G. § 2G2.2(b)(4)(A)), two levels for the use of a computer to obtain the material (U.S.S.G. § 2G2.2(b)(6)), and five levels for possession of over 600 images (U.S.S.G. § 2G2.2(b)(7)(d)). (PSR ¶¶ 29-37.) Thus, Probation calculated an adjusted offense level of 31, which comports with the parties' agreement under the plea agreement. (ECF Doc. 27, Plea Agreement, p. 16.) Probation credited Mr. Goulin with a three-level reduction for acceptance of responsibility for the offense, pursuant to U.S.S.G. §3E1.1(a) and (b). (PSR ¶¶ 43-44.) Therefore, Probation ultimately calculated a total offense level of 28 (guidelines range 78 to 97 months in criminal history category I). (PSR ¶ 97.)

After considering all factors under 18 U.S.C. § 3553(a), Probation recommended a downward variance to a sentence of 60 months, participation in the RDAP program, 15 years of post-release supervision, and a fine of $25,000. (ECF Doc. 32, Disclosed Recommendation Letter, pp. 1-2.)

Any offense involving child pornography is undeniably serious and

3

1  inexcusable. The first person to agree with that would be Mr. Goulin. He has
2  written to the Court to express his reflections on his crime after two years of
3  counseling, learning, and reflecting. But more than mere words, Mr. Goulin's
4  *actions* since his arrest demonstrate to the Court his acceptance of responsibility
5  and his commitment to reform.

6         In light of the entirety of the circumstances, Mr. Goulin requests a sentence
7  of 48 months incarceration, along with all the other terms and conditions agreed
8  upon in the plea agreement. Mr. Goulin respectfully requests that the Court
9  recommend that he serve this time at FCI Terminal Island to be near his family.
10  This sentence is appropriate and will satisfy the interests of justice in this case.

## II.

## STATEMENT OF FACTS

### A.    MR. GOULIN'S BACKGROUND, EDUCATION, AND EMPLOYMENT

       Gary Goulin was born on February 4, 1961, in Minneapolis, Minnesota.
(PSR ¶ 57.) Mr. Goulin was one of three children, and he lived in a loving and
supportive home with extended family nearby. (PSR ¶ 60.) His father, who passed
away from cancer in 2013, worked as a bookkeeper. (PSR ¶ 57.) Mr. Goulin's
mother is 84 years old, and she worked as a branch manager for a bank until her
retirement. (Ibid.) Even following his parents' divorce when Mr. Goulin was 14,
Mr. Goulin remained close with both of his parents. (PSR ¶ 61.)

       Mr. Goulin has been consistently employed since he was a teenager,
working in summers to save up for college, then working through college and
medical school. (PSR ¶ 62; **Exhibit A**, Mr. Goulin's Personal Statement.) Mr.
Goulin attended Johns Hopkins University in Baltimore, Maryland, from 1979 to
1983, earning a B.A. in Behavioral Biology. (PSR ¶ 65.) From there, he went on to
the Mayo Medical School in Rochester, Minnesota, where he earned his Doctor of

4

Medicine in 1987. (Ibid.) His intention was to become a surgeon, but through the course of his training, he changed specialties to pediatrics. (Ibid.)

In 1987, Mr. Goulin moved to Los Angeles for his internship and residency at Children's Hospital Los Angeles, where he completed his general pediatric training. (**Exhibit A**.) He then completed a fellowship in pediatric critical care at Children's Hospital and Health Center of San Diego. (Ibid.) In 1993, Mr. Goulin moved to Ft. Lauderdale, Florida, to work as a Staff Pediatric Intensivist. (Ibid.) In Ft. Lauderdale, Mr. Goulin first started to live as an openly gay man, having lived a "closeted", compartmentalized life until then. (Ibid.) However, he remained "closeted" at work due to the strong prejudice and discrimination that existed at that time. (Ibid.)

Shortly thereafter, Mr. Goulin returned to Los Angeles to work at Valley Presbyterian Hospital. (Ibid.) In 1994, Mr. Goulin met his now-husband Sanford Weinberg. (PSR ¶ 67.) They have been together in a committed relationship ever since, and in 2017, they were married in Beverly Hills. (Ibid.) Mr. Weinberg has been supportive of Mr. Goulin throughout this case. (Ibid.)

Mr. Goulin first started work at Cedars-Sinai Medical Center in 1996 as a Staff Pediatric Intensivist. (**Exhibit A.**) He eventually rose to be Associate Director of the Pediatric Intensive Care Unit. (PSR ¶ 86.) Mr. Goulin remained at Cedars-Sinai until his arrest in 2021,with an unblemished twenty-five-year record of patient care. (Ibid.) Mr. Goulin also taught at the David Geffen School of Medicine at UCLA. (PSR ¶ 66.)

Starting in 1999, Mr. Goulin visited Ecuador every year for ten years as part of a medical mission providing heart surgery for indigent patients. (Ibid.; **Exhibit A.**) He served on forty hospital committees and belonged to eight professional organizations. (**Exhibit A.**) Mr. Goulin was a designated subject matter expert for the National Ebola Teaching and Education Center. (Ibid.) Mr. Goulin had no history of any professional complaints or disciplinary actions.

1    Since his arrest in November 2021, Mr. Goulin has diligently sought new
2  employment. He has applied to over 140 positions since January 2022. (**Exhibit B**,
3  Job Applications) Unfortunately, most did not respond, and he has not been hired.
4  In the meantime, he has spent his time volunteering with Project Angel Food,
5  attending counseling, and contributing significantly to Sexual Compulsives
6  Anonymous, as will be discussed below.

7    While Mr. Goulin does have some financial resources, his net worth is
8  overstated in the PSR. Mr. Goulin and his husband Mr. Weinberg have always
9  maintained separate assets and accounts. The 2021 BMW is not owned by Mr.
10 Goulin; it is leased by his husband and therefore is neither an asset nor a liability of
11 Mr. Goulin's. (PSR ¶ 88.) Furthermore, Mr. Goulin owns just 39% of the house at
12 6617 Maryland Drive, for a gross value of $1,143,139.53. (**Exhibit C**, Home
13 Ownership Documents.) Mr. Goulin and his husband are jointly obligated on the
14 mortgage. Thus, with those two items adjusted, Mr. Goulin's total net worth is
15 $2,478,424.15.

16 **B.   MR. GOULIN'S PHYSICAL AND MENTAL HEALTH**

17    As chronicled in the PSR, Mr. Goulin suffers from several chronic
18 conditions, including Human Immunodeficiency Virus, Hyperlipidemia, and
19 Hypertension. (PSR ¶ 73.) In August 2023, he was diagnosed with chronic kidney
20 disease and a cyst on his right kidney. (**Exhibit D**, August 2023 Kidney Disease
21 Diagnosis.) Mr. Goulin takes a number of daily medications: Losartan, AndroGel,
22 Biktarvy, Aspirin, Vascepa, Niacinimide, Vitamin D supplement, CoQ 10, and
23 Atorvastatin. (PSR ¶ 74.)

24    Mr. Goulin's mental health has declined since 2018. In 2018, Mr. Goulin
25 experienced significant job insecurity and threatened decrease in pay due to the
26 hospital's austerity measures. (PSR ¶ 68.) The stress made it difficult for him to
27 sleep, and he began abusing Ambien and his prescription anti-anxiety medications
28 in response to the stress. (Ibid.) It was also at this time that he increasingly turned

6

to pornography as a coping mechanism. (Ibid.) By 2020, he realized he was struggling with addiction to pornography. (Ibid.) The stress of this case has also taken a toll on his mental health. Mr. Goulin takes 10mg daily of Citalopram for anxiety and depression, 100mg twice daily of Gabapentin for anxiety, and 0.5mg daily (as needed) of Clonazepam for anxiety. (PSR ¶ 78; **Exhibit E**, September 2023 Updated Medications List) Mr. Goulin's dependence on and addiction to Clonazepam was noted by Probation and is described at length by his psychologists, Dr. Gerard Bryant and Dr. Guy Lewis. (**Exhibit F**, Psychologists' Letters.)

## III.

## MEMORANDUM OF POINTS AND AUTHORITIES

Title 18 U.S.C. § 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. Under § 3553, factors considered to make this determination include: 1) the nature and the circumstances of the offense and the history and characteristics of the defendant; 2) the purposes of sentencing; 3) the kind of sentences available, 4) the United States Sentencing Guidelines calculation; 5) pertinent policy statements; 6) the need to avoid unwarranted sentence disparities; and 7) the need to provide restitution. 18 U.S.C. § 3553(a). In considering § 3553(a) factors, a court may consider formerly discouraged factors or facts that would not have met pre-Booker standards for departures. See United States v. McBride, 434 F.3d 470, 476 (6th Cir. 2006) ("Now, because the Guidelines are no longer mandatory and the district court need only consider them along with its analysis of the section 3553(a) factors . . . many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court–with greater latitude–under section 3553(a)."); see also United States v. Booker, 543 U.S. 220, 301 (2005) (Stevens, J., dissenting) ("[T]here can be no 'departure' from a mere suggestion.").

As set forth below, all § 3553(a) factors considered together warrant a sentence of 48 months for Mr. Goulin.

## A.   SECTION 3553(a)(1): THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Among the 18 U.S.C. § 3553(a) factors to consider is the nature and circumstances of the offense and the history and characteristics of Mr. Goulin. As one court noted, "Surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." United States v. Adelson, 441 F. Supp. 2d 506 (S.D.N.Y. 2006).

### 1.   MR. GOULIN'S HISTORY AND CHARACTERISTICS ARE MITIGATING

Mr. Goulin is 62 years old and, apart from this offense, has lived an upstanding life. He excelled in school and went to a top college and a top medical school. Not only did he do well, but he also worked throughout to support himself. From the time he graduated from medical school 36 years ago, he dedicated himself to helping children in pediatric critical care. Day in and day out, he faced the most emotionally wrenching situations many of us can imagine. He has written to the Court about being with terminally ill children as they passed, comforting their parents, and attending their funerals. (**Exhibit A**.) Looking to do more good in the world, he travelled to Ecuador to perform life-saving operations on indigent children who would never see a facility like Cedars-Sinai. (Ibid.) He taught at UCLA, he served on professional committees and organizations, and he published peer-reviewed articles in his field. (Ibid.) He regularly worked 80-hour weeks, for the love of providing care to sick children. (Ibid.)

A registered nurse who worked with Mr. Goulin for 25 years wrote, "Gary always navigated these serious and heart-breaking cases with unique skill and profound empathy. I was always struck by his honesty and compassion when working with families." (**Exhibit G**, p. 3, Letter from Katie Larkin.) Ms. Larkin

8

1 writes not only about how much Mr. Goulin cared for patients but that he "was a
2 champion for nurses and our critical role in patient care. . . I and my fellow nurses
3 trusted Gary and comfortably went to him with our questions or concerns, and he
4 always maintained a positive and supportive attitude." (Id. at p. 4.) Another
5 colleague wrote, "I have been present when he spoke with families to tell them that
6 their child was dying, and witnessed the kindness and sensitivity he displayed. As
7 for all who are adept and engaged with this work, the emotional toll is relentless,
8 yet Gary never wavered from this important, but often ignored part of medical
9 care." (**Exhibit G**, p. 8, Letter from Susan Blanchard.)

10      Mr. Goulin accepts responsibility for his conduct and understands that he
11 made a terrible choice. His references have all written that Gary was honest with
12 them about the offense and that "he was chastened and remorseful in our very
13 difficult conversation." (**Exhibit G**, p. 2, Letter from Donald Finlayson.) A former
14 colleague wrote, "It is not surprising to me that [Mr. Goulin] has expressed
15 profound regret and is extremely remorseful for his actions. . . . Gary has expressed
16 his struggle with how to make amends for his actions. . . . I strongly believe that
17 Gary has learned from this egregious act." (**Exhibit G**, p. 7, Letter from Lisa
18 Sitzman.) "I know he will grow from this experience and find a new way to help
19 people with the same passion that led him to be a successful doctor who helped his
20 patients for over 30 years." (**Exhibit G**, p. 1, Letter from Bruce Hoberman.)

21      These letters all speak to Mr. Goulin's proven track record as a kind, caring,
22 dedicated professional. They also speak to his character for honesty and
23 compassion, his complete acceptance of responsibility for what he did, and his
24 commitment to moving forward during and after his sentence as a reformed,
25 productive, contributing member of society.
26 //
27 //
28 //

9

1
2

## 2.   MR. GOULIN'S ACTIONS SINCE ARREST INDICATE THAT HE IS MAXIMALLY MOTIVATED TO REFORM

3
4

Mr. Goulin cannot go back and undo his offending behavior. Therefore, he

5

has done everything in his power since November 2021 to completely change his

6

behavior, his thoughts, and his life for the better. These actions undergird Mr.

7

Goulin's words about what the Court can expect from him going forward.

8

First, Mr. Goulin immediately began attending Sexual Compulsives

9

Anonymous meetings. The extent of his participation is detailed below, but in

10

short, he has attended over 560 meetings since his arrest less than two years ago.

11

(**Exhibit H**, SCA Meetings.) He has taken on leadership roles in the broader SCA

12

organization and routinely leads meetings, sharing his own reflections and learning

13

and encouraging others to do the same. He is committed to his own betterment as

14

well as helping others overcome their offending behavior.

15

Second, Mr. Goulin enrolled in a year-long, state certified treatment program

16

for Sexually Offending Behavior Recovery (SOBR). (**Exhibit I**, SOBR Program

17

Letters and Evaluations.) He successfully graduated from the program in January

18

2023 as a "Very Low Risk" offender and with a glowing evaluation from program

19

director Sharon O'Hara. (**Exhibit I**, pp. 13-14.) Since his arrest, he has maintained

20

oversight software on all of his devices, which confirms that he has not accessed

21

any pornography. (Ibid.) After the completion of that program, he continued group

22

therapy with SPERO Psychological Services.

23

Third, Mr. Goulin has attended weekly individual therapy and weekly or bi-

24

weekly psychiatric sessions to address the stresses and triggers that led him into the

25

pornography addiction that spiraled into the offending conduct. (**Exhibit F**.)

26

Fourth, Mr. Goulin has doggedly sought employment after being fired from

27

Cedars-Sinai and losing his license as a result of this arrest. Since January 2022, he

28

has applied for 143 jobs, ranging from online customer service representative to

1  office assistant to receptionist. (**Exhibit B**.) No work is beneath Mr. Goulin, who
2  wants to be productive and begin rebuilding his life from the ground up.

3       Fifth, while his job search has been ongoing, Mr. Goulin has volunteered
4  weekly at Project Angel Food, a reputable 501(c)(3) charity that prepares and
5  delivers meals for people debilitated by illness. (**Exhibit J**, Project Angel Food
6  Volunteer Hours.) He started in December 2021 and continues to the present,
7  having volunteered over 200 hours. This is his way of regularly contributing to
8  society while he seeks new employment.

9       Mr. Goulin has maintained all of these activities for nearly two years; he is
10  dedicated to them, and they are the foundations of his new life. He is proud of
11  these activities, and his references all mention that Mr. Goulin has told them about
12  his SCA meetings and his volunteer work. The Court can see Mr. Goulin's passion
13  for helping others, for being among a community. Unable to work in the field he
14  had been in for his entire adult life, Mr. Goulin immediately found new ways to
15  help people, he found a new community, he became a leader in that community,
16  and he stayed productive and active. Mr. Goulin knows he is going to prison, but
17  he took the initiative anyway to begin his reform now, to be continued while he is
18  in custody, and to be best set up for success when he is released.

19  **B.**   **SECTION 3553(a)(2): THE NEED FOR THE SENTENCE IMPOSED**

20       The next factors under § 3553(a) concern the need for a particular sentence.
21  The mandatory principle of § 3553 is a limiting one; the sentence must be
22  "*sufficient, but not greater than necessary,*"[1] to satisfy the need for the sentence
23  imposed:

24      (A) to reflect the seriousness of the offense, to promote respect for the
25  law, and to provide just punishment for the offense; (B) to afford
      adequate deterrence to criminal conduct; (C) to protect the public
      from further crimes of the defendant; and (D) to provide the defendant

27  [1] The <u>Adelson</u> court noted "necessary" is the "operative word." <u>Adelson</u>, 441 F.
28  Supp. 2d at 515.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2) (emphasis added).

Courts across the country have recognized that they must honor this provision. See, e.g., United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008); United States v. Spigner, 416 F.3d 708, 711 (8th Cir. 2005).

## 1.   THE SERIOUSNESS OF THE OFFENSE

The instant case undoubtedly involves an extremely serious offense and the sentence imposed should be proportionate to the seriousness of this crime. As demonstrated by the Plea Agreement and Mr. Goulin's total acceptance of responsibility, Mr. Goulin fully appreciates the seriousness of his offense and is deeply remorseful for his actions. His husband Sanford said it best: "These crimes are not excusable. Full stop." (**Exhibit G**, p. 10.) Mr. Goulin himself has reflected extensively on the seriousness of his offense. He has written, "Viewing and collecting illegal pornography is sick and wrong. The activity that surrounds its production is evil. There is no other word for it." (**Exhibit A**, p. 5.)

Mr. Goulin makes no excuse for his actions, and his plea, his actions in the last two years, and his letter to the Court all reflect that. Nonetheless, the elephant in the room must be addressed: Mr. Goulin's offending conduct in no way ever made its way into his professional practice. It was a completely separate activity that he compartmentalized in his mind; the Dr. Goulin treating patients at Cedars-Sinai and Gary at home engaging in this conduct were almost two separate people. He never harmed a patient in any way. Mr. Goulin notes that his professional experience with victims of trafficking and abuse makes him all the more aware of the harm caused by his actions and therefore all the more motivated to atone for them and share that knowledge with others. (**Exhibit A**.)

//
//
//

12

## 2.   THE NEED TO PROVIDE JUST PUNISHMENT AND PROMOTE RESPECT FOR THE LAW

18 U.S.C. § 3553(a) mandates that the court consider the need for the sentence imposed to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). In determining whether a punishment is "just," a number of factors need to be considered. A "just" punishment is punishment that "fits the crime." Simon v. United States, 361 F. Supp. 2d 35, 43 (E.D.N.Y. 2005). The punishment should not be unreasonably harsh under all of the circumstances of the case. See United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah 2005) (citing S. Rep. No. 98–225, at 75–76 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3258–59.)

In the nearly two years since his arrest, Mr. Goulin has done everything possible to be productive, to be law-abiding, and to take responsibility for breaking the law and creating victims through his conduct. He has complied with all Court orders, and he has not required the Government to expend its resources to secure his arrest or his conviction. In addition to the emotional pain and shame associated with a criminal conviction and sex offender registration, Mr. Goulin faces tremendous personal and professional consequences as a result of this case. It is clear that the experience of being investigated, indicted, and convicted at this stage in Mr. Goulin's life has already punished his wrongdoing and promoted respect for the law. He knows he is facing years in custody, and he acknowledges that that is an appropriate and just consequence of his actions.

The twin aims of just punishment and promoting respect for the law can – and therefore must – be achieved with a combination of 48 months in prison followed by a 15-year period of post-release supervision. Mr. Goulin will be over eighty years old by then. Accordingly, this Court should consider whether spending additional years in prison is strictly necessary to meet these aims.

//

//

//

13

### 3. THE NEED TO PROTECT THE PUBLIC

Another factor to consider in determining the need for the sentence imposed is whether or to what extent society needs to be protected from the defendant. Mr. Goulin has no prior criminal history. He has accepted responsibility and from the beginning expressed remorse and understanding of the victimization that results from the consumption of child pornography. The steps Mr. Goulin has already taken to change his thoughts and behaviors, both through therapy and monitoring software, have and will continue to protect the public. Post-release supervision will provide additional reassurance with strict limitations on and monitoring of his internet use. Additional custody time is not needed to protect the public. The public is not best served by keeping Mr. Goulin in custody. On the contrary, society will best benefit from allowing Mr. Goulin to safely return to the community and find new ways to help others, as he has done his entire life and as he has done since his arrest. Protecting the public does not require that Mr. Goulin be removed from society and warehoused in federal prison for any longer than 48 months.

### i. THERE IS A LOW LIKELIHOOD OF RECIDIVISM

Further, in determining whether the length of the sentence is adequate to protect the public from further crimes of the defendant, it is also relevant to determine a defendant's likelihood of recidivism.

Given Mr. Goulin's lack of any criminal history, age (he is 62 years old),[2] and the immense shame and stress he and his family have already suffered as a result of this case, it is extremely unlikely he would recidivate. Studies have shown that "Separately, age and criminal history are consistent predictors of recidivism. Considered together, they are even better predictors of recidivism." (U.S.

---

[2] See Simon v. United States, 361 F. Supp. 2d 35 (E.D.N.Y. 2005) (granting non-Guideline sentence and noting that recidivism rate for defendants between the age of 41 and 50 with a criminal history category of III is less than half that of defendants under the age of 21.)

14

1  Sentencing Commission, <u>Recidivism of Federal Offenders Released in 2010</u> 30
2  (September 2021), <u>available at</u>
3  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
4  publications/2021/20210930_Recidivism.pdf.) Recidivism rates plummeted from
5  66.6% for Category I offenders under age 21 at time of release to just 9.4% for
6  Category I offenders aged 60 or over at release. <u>Id</u>. at 30.

7       Mr. Goulin's evaluations from the Sexually Offending Behavior Recovery
8  program also identify him as being at low risk of recidivism. The final evaluation
9  report marks him as "Very Low Risk" and notes:

10  "Client's risk level was determined by behavioral compliance,
positive attitude, regular attendance at group therapy and 12-Step
11  meetings, as well as voluntary use of the Accountable2You
monitoring software. From the beginning, client has demonstrated
12  remorse and a desire to learn from his past mistakes. Client has had no
relapses of any kind while in treatment. He developed a detailed
13  Safety Plan that includes daily recovery rituals, and ongoing support
from family and 12-Step members."
14  (**Exhibit I**, p. 14.)

15       Accordingly, the Court should consider Mr. Goulin's very low risk of
16  recidivism in determining his sentence.

17     **4.**   **THE NEED TO PROVIDE THE DEFENDANT WITH
CORRECTIONAL TREATMENT IN THE MOST EFFICIENT
18  MANNER**

19       The final factor for the Court to consider in evaluating the need for the
20  sentence imposed is the need to provide the defendant with educational or
21  vocational training, medical care, or other correctional treatment in the most
22  efficient manner. There is no dispute that Mr. Goulin needs correctional treatment
23  in the form of counselling to address the condition that led to the offense.
24  Furthermore, he agrees with Probation's recommendation that he would benefit
25  from the RDAP program in custody. Forty-eight months will give Mr. Goulin
26  ample time to benefit from the programming provided by the Bureau of Prisons.

27       Mr. Goulin has already established a routine and a structure by which he has
28  been receiving "correctional treatment" in the community, to which he will return

1   upon his release. Since his arrest on November 4, 2021, Mr. Goulin has attended
2   weekly individual therapy sessions as well as weekly or bi-weekly psychiatric
3   sessions. In November 2021, he enrolled in the Sexually Offending Behavior
4   Recovery program, a treatment program certified by the California Sex Offender
5   Management Board. In January, 2023, he successfully graduated from this
6   program. The program director, Sharon O'Hara, writes:

> "Mr. Goulin continues to present as a low-risk offender when it comes
> to any recidivism . . . Gary also falls into a low-risk category because
> of his age (62), his long-term relationship (28 years), and his lack of
> any history of violence or prior arrests of any kind. As stated
> previously, Gary's positive attitude and adherence to his behavioral
> commitments over the last year continue to indicate an excellent
> prognosis for Mr. Goulin's ongoing recovery."

(**Exhibit I**, p. 17.)

Following his completion of that program, Mr. Goulin began therapy
programming at SPERO Psychological Services.

In addition to these counselling sessions and his own individual counselling,
Mr. Goulin has been a dedicated participant in Sexual Compulsives Anonymous
meetings. His first meeting was November 10, 2021, less than a week after his
arrest. (**Exhibit H**, p. 1.) He got a sponsor on November 19, 2021, and he has
attended a meeting almost daily since then; September 25, 2023, was his 562nd
meeting. (Id. at p. 25.) In February, 2022, he was elected leader and secretary of
his Wednesday weekly meeting, as well as being elected fund-raising chairman for
the SCA Los Angeles Annual Convention to be held in February, 2023. As
secretary and leader of the Wednesday weekly meeting, he brought the meeting
from a Zoom format to in-person. He continued to lead and secretary the
Wednesday in-person meeting until the end of his term on January 31, 2023. He
continues to intermittently lead the Saturday morning in-person meeting as well as
the Tuesday evening Zoom meeting. At every meeting, whether he leads or not, he
participates in some way—reading one of the passages, giving a "long share", or
sharing during the general sharing portion of the meeting. As detailed in Exhibit H,

1  he takes an active role in almost every meeting. Through SCA he has formed a

2  network, found a sponsor, and demonstrated a daily commitment to learning about

3  and working through the thoughts and behaviors that led him here. Thus, the Court

4  can rest assured that Mr. Goulin already has benefitted from treatment in the

5  community and will continue to do so after his release; his recovery and reform

6  started long before his sentence, and it will continue long after.

## IV.

## CONCLUSION

9  For the foregoing reasons, Mr. Goulin asks the Court to sentence him to 48

10  months in custody. This sentence is sufficient, but not greater than necessary, to

11  achieve the goals of sentencing for Mr. Goulin, in light of his law-abiding history,

12  his productive and peaceful character, and his demonstrated commitment to

13  correcting his wrongs. This sentence serves to reflect the seriousness of the

14  offense, promote respect for the law, and provide just punishment.

16  Dated: September 29, 2023          Respectfully submitted,
                                       WERKSMAN JACKSON & QUINN LLP

                                       Mark J. Werksman
                                       Karen M. Sosa
                                       Attorneys for Defendant
                                       Gary Goulin

17